**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Chris Yarnell, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—two electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I have been so employed since June 2017. I am currently assigned to the Office of the Resident Agent in Charge HSI Charleston, West Virginia. I have experience in conducting investigations involving computers and the procedures that are necessary to retrieve, collect, and preserve electronic evidence. Through my training and experience, including on-the-job discussions with other law enforcement agents and cooperating suspects, I am familiar with the operational techniques and organizational structure of child pornography distribution networks and child pornography possessors and their use of computers and other media devices.

3. Prior to my employment with HSI, I was a Border Patrol Agent and a Task Force Officer ("TFO") with HSI. I am a graduate of three federal law enforcement academies at the Federal Law Enforcement Training Centers ("FLETC"). I graduated from the United States Border Patrol Agent Academy in 2008, Criminal Investigator Training Program in 2017, and the Homeland Security Investigations Special Agent Training Program in 2018. As part of some of these programs, I received extensive training in the areas of law within the jurisdiction of HSI. I have specifically received training in the areas of child pornography and the sexual exploitation

and abuse of children. This training includes specialized instruction on how to conduct criminal investigations related to violations of child protection laws pursuant to Title 18, United States Code, Sections 2422(b), 2251, 2252, 2252A, and 2256.

4. As a TFO, and later a Special Agent, with HSI, I worked at the office of the Assistant Special Agent in Charge in El Centro, California, where I investigated and assisted other law enforcement officers in federal and state criminal violations related to cybercrime, child exploitation, and child pornography. I have gained experience through training at FLETC, as well as on the job experience relating to investigations involving child exploitation offenses that occurred in the Southern District of California and the Southern District of West Virginia. I have received training, specifically Internet Crimes Against Children ("ICAC") undercover chat training, in the areas of child pornography and child exploitation and have had the opportunity to observe and review examples of child pornography (as defined in 18 U.S.C. § 2256) in the form of computer media. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2252A(a)(1) (transportation of child pornography), 2252A(a)(2) (receipt or distribution of child pornography), and 2252A(a)(5)(B) (possession of child pornography), and I am authorized by law to request a search warrant.

5. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF TARGET DEVICES

6. The property to be searched is a blue Motorola G Stylus smartphone belonging to Betty Flanagan and an Apple iPhone 11 Pro Max belonging to Leonard Samiia (together, the "**TARGET DEVICES**"). The **TARGET DEVICES** are currently stored at 210 Kanawha Boulevard West, Charleston, West Virginia 25302, located in the Southern District of West

Virginia. The information to be searched is further described in Attachment A incorporated with this affidavit. HSI will search the **TARGET DEVICES** for the items more particularly described in Attachment B that constitutes evidence of production of child pornography in violation of 18 U.S.C. § 2251, distribution, receipt, and possession of child pornography in violation of 18 U.S.C. § 2252A, and enticement of a minor in violation of 18 U.S.C. § 2422(b).

7. The applied-for warrant would authorize the forensic examination of the **TARGET DEVICES** for the purpose of identifying electronically stored data particularly described in Attachment B.

## JURISDICTION

8. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## TECHNICAL TERMS

9. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. *Wireless telephone*: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading

3

information from the Internet. Wireless telephones may also include global positioning system technology for determining the location of the device.

b. *Digital camera*: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media includes various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. *Portable media player*: Portable media player refers to a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can use removable storage media. Removable storage media includes various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as calendars, contact lists, clocks or games.

d. *PDA*: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

e. *Global Positioning System*: Global Positioning System ("GPS") refers to a navigation device used to display its current location. It often records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. GPS consists of twenty-four NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

4

    f. *Internet*: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

    g. *Computer*: Computer refers to any electronic, magnetic, optical, electrochemical, or other high speed data processing device capable of performing logical or storage functions and includes any data storage facility or communications facility directly related to such a device. As used herein, "computer" also incorporates digital devices that complete these same functions, such as smartphones, tablets, connected devices, and e-readers. See 18 U.S.C. § 1030(e)(1).

10. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications, I know that the **TARGET DEVICES** have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs, and allow them to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## CHARACTERISTICS OF PERSONS WHO COLLECT OR TRAFFIC CHILD PORNOGRAPHY

11. Your affiant has experience in assisting with, and leading, investigations into child pornography. Your affiant has conducted investigations into those who solicit and share child pornography by electronic means. Your affiant has worked with other law enforcement agencies to conduct logical investigations into those who solicit, share, and otherwise engage in activity related to child pornography.

12. As a result of the aforementioned knowledge and experience, your affiant has learned that the characteristics described in this affidavit are generally found to exist in varying combinations and be true in cases involving offenders who send, cause to be sent, distribute, exhibit, possess, display, transport, manufacture, or produce material which depicts minors engaged in sexually explicit conduct. Said material may include, but is not limited to, photographs,

5

negatives, slides, magazines, printed media, motion pictures, video tapes, books, and other media stored electronically on computers, digital devices, or related digital storage media.

13. Offenders who deal with child pornography material depicting minors engaged in sexually explicit conduct obtain or traffic in such materials through many sources and by several methods and means. These sources, methods and means include, but are not limited to, the following:

   a. Downloading via the Internet and other computer networks (including from websites, peer-to-peer file sharing networks, news groups, electronic bulletin boards, chat rooms, instant message conversations, internet relay chats, email).

   b. Receipt from commercial sources within and outside of the United States through shipments, deliveries, and electronic transfer.

   c. Trading with other persons with similar interests through electronic transfer, shipments, or deliveries.

14. These offenders collect materials depicting minors engaged in sexually explicit conduct for many reasons. These reasons include the following:

   a. For sexual arousal and sexual gratification.

   b. To facilitate sexual fantasies in the same manner that other persons utilize adult pornography.

   c. As a medium of exchange in return for new images and video depicting minors engaged in sexually explicit conduct.

15. These offenders often view their child pornographic materials as valuable commodities, sometimes even regarding them as prized collections. Subsequently, these offenders prefer not to be without their child pornographic material for any prolonged period of time and often go to great lengths to conceal and protect their illicit collections from discovery, theft, or damage.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

16. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

17. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICES** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICES** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

7

## PROBABLE CAUSE

18. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 2251, 2252A, and 2422(b) have occurred. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

19. On or about February 20, 2023, the West Virginia State Police ("WVSP") located in Logan County, West Virginia received information from a fourteen-year-old minor female victim ("MV") that MV was being harassed on Facebook by an account with the username "Angel Emowolf." Further investigation by the WVSP revealed that the owner and user of the account was Leonard SAMIIA ("SAMIIA"). Using his Facebook account, SAMIIA had instructed MV to send him sexually explicit photographs of herself; MV complied.

20. On or about July 6, 2023, your affiant received information from the WVSP regarding assistance with the investigation.

21. As part of the investigation, your affiant reviewed Facebook messages between SAMIIA and MV that transpired on or about February 20, 2023.

22. In the early morning on or about February 20, 2023, MV and SAMIIA discuss whether MV was raped by an unknown assailant. In the course of this discussion, SAMIIA directs MV to send a picture of her vagina so that he may confirm whether her hymen is intact after the alleged rape. MV sends SAMIIA the images he requests.

   a. At approximately 0023 hours Eastern Time ("ET"), MV asks, "Should I get an abortion[?]"[1] SAMIIA responds, "Yes." MV responds, "Okay I'll make an appointment," and SAMIIA says, "Let me see yo[u]r pussy so I can see how bad it is after that shit."

---

[1] The precise text of the messages has been left unaltered unless otherwise noted with brackets.

8

    b. Minutes later, at approximately 0532 hours ET, SAMIIA says, "Send me a pic of it so I can see inside of it," and MV replies, "U do realize you can't see inside it's black." SAMIIA says, "Stretch it open." MV responds, "Even with it stretched out you can barely see inside," and SAMIIA replies, "I can see just do it."

    c. A few minutes later, SAMIIA says, "Send a pic" and "I will circle the part I am talking about." MV asks if she can show SAMIIA her vagina on a video call. SAMIIA tells MV she can show him on a video call, but he still needs a picture from her. MV asks, "I do have a question why do you want to see?" and SAMIIA replies, "you are mine" and "Nobody else."

    d. MV then sends a photograph to SAMIIA which depicts a close-up of a vagina. The female's hand is manually manipulating her vagina as instructed by SAMIIA ("Photo 1").

    e. SAMIIA responds, "Stretch it open" and MV asks, "More than it already is[?]" SAMIIA says, "Go inside and stretch it" and "Yes."

    f. MV then sends a second photo, like the first, showing her manually manipulating her vagina as SAMIIA instructed ("Photo 2").

    g. SAMIIA tells MV, "Ok good news is the wall" and sends Photo 2 back to MV with the vaginal opening circled. SAMIIA says, "The pussy wall" and "Doesn't look like anything has been inside there yet."

23. Later in the morning on or about February 20, 2023, MV reminds SAMIIA that she is a minor who still attends school.

    a. At approximately 0556 hours ET, MV says, "I gotta get dressed," and SAMIIA replies, "No school today." MV says she has missed too much school already, and MV is "required to go." SAMIIA tells MV to "drop out," and MV replies, "Every student has to have 180 days of school." SAMIIA again tells MV, "You can drop out." MV says, "Since I'm 17 I can't drop out without permission." SAMIIA replies, "You can too," and MV says, "I'm not 18 yet." SAMIIA tells MV she can "still drop out at 17," and MV says, "according to my school no I can't."

24. MV asks SAMIIA to delete Photos 1 and 2, but SAMIIA becomes angry and repeatedly threatens to post the photos on the internet.

    a. At approximately 0625 hours ET on or about February 20, 2023, MV tells SAMIIA to "Delete the photos of me." SAMIIA replies, "NO imma post them everywhere."

b. At approximately 1528 hours ET on or about February 20, 2023, SAMIIA sends Photo 1 back to MV. Then, SAMIIA writes, "That's it" and "they are all being posted."

c. At approximately 1601 hours ET on or about February 20, 2023, SAMIIA says, "Have fun with these pics being posted now." Then, again, SAMIIA sends Photo 1 back to MV. SAMIIA writes, "Being posted all over Facebook google snapchat twitch and everywhere" and "THEY WILL BE POSTED ON YOUR SCHOOL WEBSITE TOO."

25. SAMIIA also makes a physical threat against MV and her family. At approximately 1716 hours ET on February 20, 2023, SAMIIA says, "I AM ON MY WAY AND I WILL BEAT ALL YALLS ASSESS."

26. The **TARGET DEVICES** are currently in the lawful possession of HSI. The **TARGET DEVICES** came into HSI's possession in the following way:

a. *Apple iPhone 11 Pro Max*: On or about January 23, 2024, SAMIIA was indicted for 18 U.S.C. § 2422(b) (enticement of a minor), 18 U.S.C. § 2252(a)(2) (receipt of child pornography) and 18 U.S.C. § 2252A(b)(1) (distribution of child pornography). On February 1, 2024, HSI arrested SAMIIA in Jackson, Mississippi. During SAMIIA's arrest, law enforcement seized the Apple iPhone 11 Pro Max described in Attachment A from SAMIIA.

b. *Motorola G Stylus*: On or about February 2, 2024, your affiant and WVSP Trooper Seth Bowling traveled to SAMIIA's mother's residence located in Wapakoneta, Ohio. While at the residence, your affiant and Trooper Bowling conversed with SAMIIA's mother, Betty Flanagan, and another male family friend who was present in the home. Ms. Flanagan told your affiant that she believed SAMIIA's current girlfriend was "underage" and lived in Oklahoma or Kentucky. Your affiant and WVSP Trooper Bowling learned during their conversation that SAMIIA had been using a phone of Ms. Flanagan's deceased husband, a Blue Motorola G Stylus, and that the phone remained in Ms. Flanagan's possession. Ms. Flanagan allowed Trooper Bowling and your affiant to look at the contents of the phone, and your affiant identified a photo on the phone that he believed MV had sent to SAMIIA. Ms. Flanagan subsequently signed a consent form for HSI to search the cellphone. The phone was seized and brought back to the HSI office in Charleston, West Virginia. An HSI computer forensic analyst made an image of the cellular telephone in order to preserve its contents; however, it has not been reviewed.

Therefore, while HSI might already have all necessary authority to examine the **TARGET DEVICES**, I seek this additional warrant out of an abundance of caution to be certain that an

examination of the **TARGET DEVICES** will comply with the Fourth Amendment and other applicable laws.

27. The **TARGET DEVICES** are currently in storage at 210 Kanawha Boulevard West, Charleston, West Virginia 25302. In my training and experience, I know that the **TARGET DEVICES** have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the **TARGET DEVICES** first came into the possession of HSI.

28. Based on the totality of the facts furnished to your affiant, your affiant believes there is probable cause to conduct a full forensic search of the **TARGET DEVICES** to search for evidence of violations of violations of 18 U.S.C. §§ 2251; 2252A; and 2422(b).

## NATURE AND MANNER OF EXECUTION

29. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

30. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

31. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET DEVICES** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted by:

_____
Christopher Yarnell, Special Agent
Homeland Security Investigations

Signed and sworn to by telephone this  1st  day of April, 2024.

_____
HONORABLE DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE